## BID PROCEDURES FOR THE SALE OF
## THE EQUIPMENT OF SHEEHAN PIPELINE CONSTRUCTION COMPANY

Subject to receipt of a higher or better offer as determined by the Bankruptcy Court, Debtor proposes to effectuate the transactions contemplated by that certain *Asset Purchase Agreement* (the "Stalking Horse APA") dated as of April 13, 2016, by and among Ritchie Bros. Auctioneers (America), Inc. (the "Stalking Horse") and the Debtor (the "Transaction").

The bid procedures (the "Bid Procedures") set forth herein describe, among other things, the manner in which the bidders and bids become Qualified Bidders and Qualifying Bids (each as defined below), the receipt and negotiation of bids received, the conduct of any subsequent Auction (as defined below), the ultimate selection of the Successful Bidder (as defined below), and Court approval thereof (collectively, the "Bidding Process").

These Bid Procedures have been approved and authorized pursuant to the Order Approving and Establishing Bid Procedures and Manner and Form of Notice of Sale of Equipment of Debtor (the "Bid Procedures Order") entered by the United States Bankruptcy Court for the Northern District of Oklahoma (the "Bankruptcy Court") on _____.

1. Assets to be Sold

The Stalking Horse APA provides for, among other things, the sale to the Stalking Horse of certain of Debtor's equipment described in Exhibit A to the Stalking Horse APA (the "Equipment"). The Transaction is subject to the approval of the Bankruptcy Court. The Transaction is subject to higher or better offers as more particularly set forth in these Bid Procedures. The Stalking Horse has agreed to pay $29.5 million for the Equipment ("Purchase Price"), subject to price adjustments as set forth in the Stalking Horse APA, and subject to a profit sharing arrangement that affords Debtor with the possibility of additional consideration.

2. Break Up Fee

In the event that Stalking Horse (1) is not the Successful Bidder at the Auction, or (2) the Equipment is sold to another bidder at the Auction, and Stalking Horse has not breached its obligations under the Stalking Horse APA, Stalking Horse shall be entitled to a Break-up Fee in the amount of three percent (3%) of the Purchase Price totaling $885,000, as defined in the Stalking Horse APA.

3. Deposit

Stalking Horse has made a deposit (as hereafter defined) with Debtor in the amount of $1,500,000 ("Good Faith Deposit"). Stalking Horse consents to Debtor using the Good Faith Deposit for operations purposes to protect, preserve and facilitate the sale of the Equipment conditioned upon (a) payment of 5% simple interest from the date Debtor receives Stalking Horse's Good Faith Deposit until Stalking Horse is repaid unless Stalking Horse is the successful bidder, (b) Stalking Horse receiving protections for repayment, including rights under 11 U.S.C. section 506(c) and recognition of an administrative status under 11 U.S.C. section 503(b), and (c)

entry of a non-appealable Bankruptcy Court order in a form acceptable to Stalking Horse approving these Bid Procedures. In the event there is a Competing Transaction or any other form of sale transaction that involves the Equipment, Stalking Horse will be entitled to repayment of its Good Faith Deposit plus accrued interest from the proceeds of the Competing Transaction, and shall be entitled to recover such Good Faith Deposit and interest from the first proceeds of the disposition, sale or transfer of the Equipment through a Competing Transaction.

4. Participation Requirements

Any Potential Bidder that wishes to participate in the Bidding Process must become a "Qualified Bidder." As a prerequisite to becoming a Qualified Bidder, a Potential Bidder:

(a) Must be able, as determined by Debtor, to consummate a transaction based on submission of a Qualifying Bid (cash without financing contingency; including all Equipment; markup APA; meet overbid requirements; agree to profit sharing) as more specifically defined below;

(b) Must submit a Qualifying Bid on or before the Bid Deadline; and

(c) Must participate in the Auction.

A Potential Bidder who satisfies the foregoing prerequisites shall be deemed a "Qualified Bidder." Debtor shall determine whether a Potential Bidder is a Qualified Bidder.

The Stalking Horse is deemed a Qualified Bidder and the Stalking Horse APA constitutes a Qualifying Bid for all purposes.

5. Due Diligence

To the extent permitted by these Bid Procedures, Debtor shall afford any bidder who has satisfied the conditions contained in section 3(a) above the opportunity to conduct reasonable due diligence. This will include an opportunity for such bidders to receive available information about the Equipment, to request additional information from Debtor, to review relevant information regarding Debtor's Equipment at Debtor's principal place of business or at sites where the Equipment is stored or maintained pending sale hereunder, and to discuss due diligence issues with representatives of Debtor. The due diligence period shall extend to the Bid Deadline (as defined below). Debtor will be permitted to place reasonable restrictions on a Potential Bidder's due diligence visits and requests for additional information but will cooperate to provide a potential bidder adequate information concerning the Equipment to enable the making of a bid proposal.

Debtor and its representatives shall not be obligated to furnish any due diligence information after the Bid Deadline. Due diligence shall be completed on or before the Bid Deadline.

6. Bid Requirements/Determination of Qualifying Bid Status

2

To be deemed a "Qualifying Bid," a bid must be received from a Qualified Bidder by a date no later than the Bid Deadline that:

(a) Includes a letter stating that Qualified Bidder's offer is irrevocable[1] until the closing of the Transaction if such Qualified Bidder is the Successful Bidder (as defined below) and whether such Qualified Bidder agrees to serve as a Back-up Bidder (as defined below);

(b) states such Qualified Bidder offers to purchase the Equipment on terms and conditions substantially as set forth in the Stalking Horse APA, including the purchase of all Equipment;

(c) identifies the cash consideration to be paid for the Equipment;

(d) includes a duly authorized and executed Stalking Horse APA marked to show the specific changes to the Stalking Horse APA that the Potential Bidder requires (a "Marked Agreement"). The Marked Agreement submitted by a Potential Bidder shall:

    i. be on terms and conditions no less favorable to Debtor's estate than the terms and conditions contained in the Stalking Horse APA (as determined by Debtor in its reasonable business judgment);[2]

    ii. (1) not contain any financing or due diligence contingencies of any kind to closing the Transaction; and (2) contain evidence that the Qualified Bidder has financial resources readily available sufficient in the aggregate to consummate the transaction contemplated by the Marked Agreement within the time period permitted by such Marked Agreement, which evidence is reasonably satisfactory to Debtor; and

---

[1] The Back-up Bidder (as defined below) shall be required to keep its bid open and irrevocable until the earlier of 5:00 p.m. (prevailing Central time) on the date which is the earlier of (i) twenty (20) calendar days after the date of the Sale Hearing (the "Outside Back-up Date") and (ii) the closing of the Transaction with the Successful Bidder.

[2] The Stalking Horse APA has a profit sharing mechanism wherein Debtor will share in profits realized by the Stalking Horse upon successful auction of the Equipment by the Stalking Horse. Debtor acknowledges and understands that the Stalking Horse is uniquely positioned such that it can provide such a profit sharing arrangement but that other Qualified Bidders may not be looking to auction the equipment and cannot offer a similar profit sharing agreement. Debtor may request that the Bankruptcy Court estimate the present value of the profit sharing component, if it deems it necessary to compare competing bids.

        iii.    not contain any conditions to closing of the transaction on the receipt of any third party approvals (excluding that approval required by the Bankruptcy Court).

   (e) includes a good-faith deposit (the "Qualified Bidder Deposit") in the form of a certified or bank check (or other form acceptable to Debtor) payable to the order of Debtor (or such other party as Debtor may designate) in the amount of $500,000 (US). The Qualified Bidder must deliver the Good Faith Deposit on or before the Bid Deadline;

   (f) contains such financial or other information to allow Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the transactions contemplated by the Marked Agreement;

   (g) does not entitle the Qualified Bidder to any break-up fee, expense reimbursement, or similar type of payment;

   (h) fully discloses the identity of the entity that will be bidding in the Auction or otherwise participating in connection with such bid, and the complete terms of any such participation; and

   (i) provides for an aggregate cash consideration of at least $32.5 million.

A competing bid meeting the above requirements shall constitute a "Qualifying Bid." Debtor shall make a determination regarding whether a bid is a Qualifying Bid and shall notify bidders whether their bids have been determined to be qualified by no later than 1:00 p.m. (prevailing Central time) on _____.

7. Bid Deadline

   (a) A Qualified Bidder that desires to make a bid shall deliver a written or electronic copy of its bid so as to be received no later than 4:00 p.m. (prevailing Central time) on _____ (the "Bid Deadline") to counsel to Debtor, McDonald, McCann, Metcalf & Carwile, 15 E. Fifth Street, Suite 1400, Tulsa, OK 74103 (gmcdonald@mmmsk.com). Within 48 hours of receipt of a bid, Debtor shall provide a copy of such bid to counsel to the Stalking Horse. Debtor shall provide copies of all Qualifying Bids to all Qualified Bidders no later than 48 hours before the beginning of the Auction.

   (b) Debtor may extend the Bid Deadline at any time on or before the date of the Bid Deadline. If Debtor extends the Bid Deadline, Debtor will promptly notify all Qualified Bidders of such extension.

8. Evaluation of Qualifying Bids

(a) Before the Auction, Debtor shall determine which of the Qualifying Bids is likely to result in the highest and best value to Debtor's estate (the "Initial Highest Bid"). For purposes of evaluation, the Debtor will consider all such Qualifying Bids against the Stalking Horse bid and the unique profit sharing provision agreed to by the Seller and the Stalking Horse.

(b) Promptly on determination of the Initial Highest Bid, and in any event, at least one business day before the commencement of the Auction, Debtor will provide to the Auction Participants (as defined below) a copy of the Initial Highest Bid and notification that Debtor has determined that such bid is the Initial Highest Bid. To allow the Auction Participants to evaluate the Initial Highest Bid, Debtor shall use commercially reasonable efforts to disclose the value that, in its business judgment, Debtor places on the Initial Highest Bid and on such Auction Participant's Qualifying Bid (including value attributed to the profit sharing component).

9. No Qualifying Bids

If no timely Qualifying Bid (other than the Stalking Horse's bid) is received by the Bid Deadline or the Stalking Horse's Qualifying Bid is determined to be the Initial Highest Bid, Debtor shall not hold an Auction and instead shall request at the Sale Hearing (as defined below) that the Bankruptcy Court approve the Stalking Horse APA with the Stalking Horse and declare the Stalking Horse and the Stalking Horse APA to be the Successful Bidder/Bid.

10. Auction

In the event that Debtor timely receives one or more Qualifying Bids other than the Stalking Horse's bid, that Debtor in its business judgment determines to be higher or better than the Stalking Horse's Qualifying Bid, Debtor shall conduct an auction (the "Auction") with respect to such Qualifying Bids in order to determine, in the business judgment of Debtor the Successful Bid (as defined below). The Auction shall be governed by the following procedures:

(a) Only the Stalking Horse and the other Qualified Bidders who have made a Qualifying Bid shall be entitled to make any subsequent Qualifying Bids at the Auction (the "Auction Participants");

(b) Debtor, the Auction Participants, their respective professionals, any representative of any official committee, and a representative from the Office of the United States Trustee, and any other party in interest will be entitled to attend, participate and be heard at the Auction, but only the Auction Participants (including the Stalking Horse) will be entitled to make any subsequent Qualifying Bids at the Auction;

(c) The Auction, if required, shall be held in the Bankruptcy Courtroom at such time scheduled by the Bankruptcy Court;

(d) Bidding shall commence at the amount and terms of the Initial Highest Bid, with the next bids to exceed the Initial Highest Bid by the increment set forth in paragraph (f) below;

(e) Each of the Auction Participants shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Transaction;

(f) At the commencement of the Auction, Debtor shall formally announce the Initial Highest Bid. All Qualifying Bids at the Auction will be based on and increased therefrom, and thereafter made in minimum increments of at least $500,000 higher than the previous Qualifying Bid or in such other lesser increments as Debtor or the Bankruptcy Court may determine. In the event the Initial Highest Bid is the Purchase Price contained in the Stalking Horse APA, the first increased Qualifying Bid must exceed the Purchase Price by $3 million;

(g) The Stalking Horse shall be entitled to submit successive Qualifying Bids as overbids at the Auction and, in calculating the amount of the Stalking Horse's overbid, the Stalking Horse shall be entitled to a credit in the amount of the Break-Up Fee (in an amount equal to 3% of the Purchase Price as defined in the Stalking Horse APA--$885,000). For example, if at the Auction a subsequent Qualifying Bid submitted by the Stalking Horse is the Successful Bid (over another Qualifying Bid that was submitted), then the purchase price that must be paid by the Stalking Horse pursuant to such Successful Bid shall be reduced by the amount of the Break-Up Fee.

(h) The Auction Participants shall have the right to submit successive Qualifying Bids as overbids;

(i) The Auction will be conducted openly and the Auction Participants will be informed of the terms of the highest and best previous bid;

(j) The Qualified Bidder that submitted the Successful Bid shall become the "Successful Bidder" and shall have such rights and responsibilities of the buyer, as set forth in the applicable Stalking Horse APA or Marked Agreement;

(k) By making a Qualified Bid at the Auction, an Auction Participant (including the Stalking Horse if the Stalking Horse makes a subsequent Qualifying Bid at the Auction) shall be deemed to have agreed to keep its final Qualifying Bid made at the Auction open through the closing of the Transaction, if such Qualifying Bid is selected as the Successful Bid; and

(l) Debtor, subject to the approval of the Bankruptcy Court, shall have the right to adopt such other rules for the Auction (including rules that may depart from those set forth herein) that it determines in its business judgment will promote the goals of the Auction, including promoting the highest or otherwise best value for Debtor's estate.

11. Sale Hearing

   (a) The Successful Bid will be subject to approval by Debtor and the Bankruptcy Court immediately after the conclusion of the Auction. The evidentiary hearing to consider approval of the Successful Bid (the "Sale Hearing") will be held before the Bankruptcy Court on _____ 2016 at __:__ .m. (prevailing Central Time) or such other date as the Bankruptcy Court's docket may accommodate. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or requested by Debtor with the approval of the Successful Bidder but without further notice to creditors and parties in interest other than by announcement by Debtor of the adjourned date at the Sale hearing.

   (b) Debtor's presentation to the Bankruptcy Court for approval of a Successful Bid does not constitute Debtor's acceptance of the Qualifying Bid. Debtor shall be deemed to have accepted a Successful Bid only when the Successful Bid has been approved by order of the Bankruptcy Court.

   (c) At the Sale Hearing, Debtor will seek the entry of an order of the Bankruptcy Court approving and authorizing the Transaction with the Successful Bidder on the terms and conditions of the Successful Bid. The Successful Bidder shall appear at the Sale Hearing and be prepared to testify in support of the Successful Bid and the Successful Bidder's ability to close in a timely manner.

   (d) No later than fifteen (15) calendar days after entry of the order approving the sale, Successful Bidder and Debtor shall complete and execute all agreements, contracts, instruments and other documents evidencing and containing terms and conditions on which the Successful Bid was made and the Transaction contemplated by the Successful Bid shall close by the fifteenth (15th) calendar day after entry of the order approving the sale.

12. Return of Good Faith Deposit(s)

   (a) Except as provided herein, the Qualified Bidder Deposit of all Qualified Bidders (other than the Stalking Horse and the Successful Bidder) shall be returned to each such Qualified Bidder not selected by Debtor as the Successful Bidder no later than five (5) business days following the Auction.

   (b) The Good Faith Deposit of the Stalking Horse and the Qualified Bidder Deposit of the Successful Bidder will be distributed pursuant to and in accordance with the Stalking Horse APA or the Marked Agreement, as applicable.

   (c) The Qualified Bidder Deposit of the Back-up Bidder (as defined below) shall be returned, without interest, no later than the third (3rd) business day after the earlier to occur of: (i) the closing of the Transaction with the Successful Bidder or (ii) the Outside Back-up Date (as defined below).

13. Failure to Consummate Transaction

   (a) If an auction is conducted, the party with the next highest and best Qualifying Bid to the Successful Bid at the Auction shall serve as a back-up bidder (the "Back-up Bidder") and such bid shall be open and irrevocable until the earlier of 5:00 p.m. (prevailing Central Time) on the date which is the earlier of (i) 20 calendar days after the date of the Sale Hearing (the "Outside Back-up Date") or (ii) the closing of the Transaction with the Successful Bidder.

   (b) Following the Sale Hearing, if the Successful Bidder fails to consummate an approved Transaction because of (i) the failure of a condition precedent beyond the control of either Debtor or the Successful Bidder, or (ii) a breach or failure to perform on the part of such Successful Bidder, the Back-up Bidder will be deemed to be the new Successful Bidder, and Debtor will be authorized to consummate the Transaction with the Back-up Bidder without further order of the Bankruptcy Court and such last Qualifying Bid of the Back-up Bidder shall thereupon be deemed the Successful Bid. In the case of (ii) above, the defaulting Successful Bidder's Qualified Bidder Deposit or in the case of the Stalking Horse, the Good Faith Deposit, be forfeited to Debtor, and Debtor specifically reserves the right to seek all available damages from the defaulting Successful Bidder.

14. Objections

   (a) Objections, if any, to the consummation of the Transaction (the "Objections") shall be filed with the Bankruptcy Court and served such that each Objection is actually received no later than 5:00 p.m. (prevailing Central Time) on _____, 2016 (the "Objection Deadline") by the following parties: (i) counsel to Debtor, McDonald, McCann, Metcalf & Carwile (gmcdonald@mmmsk.com); (ii) counsel to Caterpillar Financial Services Corporation (_____); (iii) counsel to Zurich American Insurance Company (_____); (iv) counsel for the Stalking Horse (mills.mike@dorsey.com); and (v) the United States Trustee at the Office of the United States Trustee (katherine.vance@usdoj.gov).

   (b) Any Objections shall be presented at the Sale Hearing.

15. Modifications

Debtor reserves its rights to:

   (a) determine (i) which Qualifying Bid, if any, is the highest or otherwise best offer; and (ii) reject at any time before entry of an Order of the Bankruptcy Court approving the Successful Bid, any bid that is (1) inadequate or insufficient, (2) not in conformity with the requirements of the Bankruptcy Code or these Bid Procedures, or (3) contrary to the best interests of Debtor, its estate and its creditors; and

(b) modify the Bid Procedures or impose, at or before the Auction, additional customary terms and conditions on the Transaction involving the Equipment, including, without limitation (i) extending the deadlines set forth in these Bid Procedures; (ii) modifying bid increments; (iii) adjourning the Auction at the Auction and/or adjourning the Sale Hearing in open court without further notice; (iv) withdrawing the Equipment from the Auction at any time before or during the Auction; or (v) canceling the Auction. Any such modifications shall be subject to the rights of Stalking Horse under the APA and Bid Procedures Order.